## GRAHAM *v.* SMITH.

The owner of a dog has such a property in it as will enable him to maintain an action of trover for its recovery in case of its wrongful conversion.

Submitted January 22,—Decided March 8, 1897.

Certiorari. Before Judge Callaway. Richmond county. March 16, 1896.

Smith brought bail-trover against Graham to recover the possession "of one terrier slut named Belle," describing it, which he alleged was worth $10. Graham demurred generally; because under the laws of Georgia a dog is not property for civil purposes, is not and could not be the subject-matter of conversion, and could not be made the subject-matter of contract, having no value in law; and because plaintiff's remedy, if any, is by possessory warrant. The magistrate overruled the demurrer, and this decision was sustained on certiorari.

*William D. VanPelt,* for plaintiff in error.
*Samuel F. Garlington,* contra.

LITTLE, Justice.

It is somewhat difficult to determine the status of the dog as property in this State; it is not difficult to show that the owner *has* a property right in the animal, but it is difficult to define the nature and extent of it. This right seems to be better defined at common law than it is by the construction which this court has put upon our statutes. Our constitution, art. 7, sec. 2, par. 1, impliedly recognizes dogs as property. It provides that the General Assembly may impose a tax upon such domestic animals as from their nature and habits are destructive of other property. It is true that this power to tax partakes of the nature of a police regulation and is made the exception to our uniform and ad valorem system of taxation, but the constitution evidently intends to and does denote the dog as a domestic animal and by reference classes this animal with *other* property. Section 3822 of the Civil Code recognizes the ownership of dogs, in that it makes the owners liable to suit for the recovery of damages for injuries inflicted by their dogs under certain circumstances. [ Section 164 of the Penal Code makes the dog eo nomine a subject of simple larceny. This provision, however, does not seem to bring the dog as property to any high degree, because, in speaking of all other domestic animals, it is provided, "and also a dog" may be the subject of simple larceny; implying two things: that he was not theretofore a subject of simple larceny, nor was he a domestic animal. ] To one of us, at least, a possible reason why the dog may not by common consent have been accorded a place among domestic animals not more worthy and even less valuable, is suggested by a learned writer (Grotius) when he says, "The reason why some creatures fly and avoid us, is not the want of gentleness and mildness on their part, but on ours." In *Jemison* v. *Southwestern Railroad,* 75 Ga. 444, which was an action against a rail-

road company for the negligent and malicious killing of a dog by the operation of a train of cars, it was held that a dog is property only in a qualified sense and that such an action would not lie; and in the case of *Patton* v. *The State*, 93 *Ga.* 111, it was held that the wilful and malicious killing of a dog was not an indictable offense under section 729 of our Penal Code. In the latter case, however, the ruling was based on the construction that the subjects of that particular statute were inanimate property. In the case, however, of *Manning* v. *Mitcherson*, 69 *Ga.* 447, it was ruled that the law of this State contemplated that to have property in animals which are wild by nature, the owner must have them within his actual possession, custody or control, and this may be done by taming, domesticating or confining them; and it was ruled also in that case that a possessory warrant would lie for the recovery of a bird when so in possession; and animals by that decision come under the same class. It is therefore apparent that an owner has property in his dog, and that this property is sufficient to support an action to recover possession of it when such has been lost.

Dogs have been held to be property by the courts in the District of Columbia, in Kansas, Texas, Connecticut, Tennessee, Michigan, Nebraska, Utah, and perhaps in other States. A contrary ruling has been made in several of the other States. His status seems to be more clearly defined by the common law. The compilers of the American & English Ency. of Law, vol. 1, p. 584, lay down the proposition that "at common law the dog is considered a tame, harmless and docile animal." If this be true, and our investigation does not bear it out to its full meaning, then the owner can have an absolute property in such animals because "animals which are of a tame and domestic nature are the subjects of absolute property." American & English Ency. of Law, vol. 1, p. 572. The latter proposition is supported by reference to a number of authorities. We however think that

Chancellor Kent more correctly lays down the common law rule, that "animals feræ naturæ, so long as they are re-claimed by the art and power of man, are also the subject of a qualified property," and that "while this qualified property continues, it is as much under the protection of law as any other property, and every invasion of it is redressed in the same manner." Kent's Com. vol. 2, *348. Thus it has been held that trover lies for wild geese which have been tamed, but which, without regaining their natural liberty, have strayed away. 10 Johns. (N. Y.) 102. So also for domestic fowls. 47 Vt. 603. Blackstone declares that the property in a dog is *base* property, but that such property is sufficient to maintain a civil action for its loss. 4 Black-stone, 236. Professor Schouler, in his treatise on the Law of Personal Property, §49, pronounces the dog to be a tame animal, from which definition it would appear that an owner can acquire an absolute property in the animal; and he dis-tinguishes this animal from such others as property can be acquired in, only by possession. So it will be seen that at the common law and under our statutes the owner has prop-erty in his dog, and not only so, but such property right is sufficient to maintain a civil action to recover its possession.

In the case now under consideration, the defendant in error brought an action of trover in a justice's court to re-cover possession of his dog. A demurrer was filed to the proceeding in that court, which was overruled by the mag-istrate, and the case taken to the superior court by writ of certiorari; whereupon the judge of the latter court held that the ruling of the magistrate was correct. So do we, on the authorities before referred to. The action of trover, while changed with us in some respects, was originally a special action on the case in favor of any person who had a general or special property in goods against any person who wrong-fully withheld them from his possession. The special or qualified property which has been shown to exist in animals of this character is sufficient to support the action. The ac-

tion lies for every species of personal property, animate or inanimate. Wait's Actions and Defenses, vol. 6, pp. 128, 155. The question was expressly ruled in the State of Massachusetts, even though the courts of that State had declared that the property right in a dog was only a qualified one. See Cumming v. Perham, 1 Metc. (Mass.) 555. The question was likewise ruled in Binstead v. Buck, 2 W. Blackstone's Reports, top page 1117.

*Judgment affirmed. All the Justices concurring.*